Good morning, Your Honors, and may it please the Court. My name is Travis Story, and along with co-counsel Greg Payne, we are here representing the appellant, Oren Paris. I intend to reserve five minutes of my time for rebuttal. From this case, we have a finding from the lower court that because of bad faith and intentional destruction of potentially useful evidence, that resulted in the finding of a due process violation. The due process violation was found by the lower court, but I believe one of the key questions for this court is did the judge err in the remedy in which he gave? We believe that the only proper error, or the only proper remedy, for this due process violation is dismissal. When you couple the flagrant bad faith and the fact that there is the universe of unknown evidence which was destroyed, there becomes no other remedy which is adequate for the constitutional due process violation which was already found. What do you do with the case law that suggests that dismissal of the indictment should be an absolute last resort if you can't remedy it some other way? Judge Strauss, I think this is one of those cases that if there's ever a case that's a bad faith destruction of evidence case, this is that case. Because when you look at the variant cases that are out there, what you find is most every case either doesn't find bad faith, or when they found bad faith, the reason they could do some other remedy is because they knew what the evidence was. In this case, we don't know what was on the laptop. We have. Well, but here's the problem I'm having. The evidence is not necessarily exculpatory. I mean, we don't know what it is. But the district court said, who's most familiar with the case, said, look, the most I can say is it's potentially useful. And I'm not even sure it's that. I'm going to go ahead and assume without deciding that it would be potentially useful, and then go ahead and give a remedy. I mean, doesn't that kind of undermine your argument that we're not even sure it's potentially useful information? Well, to answer your question, Judge Strauss, in two ways. One, the district court opined for four pages on what it could be and tried to imagine it's all speculation. All anybody can do is speculate. The only person who knew what was on that laptop is the FBI agent. The FBI agent that wiped the laptop twice and was found to have no credibility by the judge. When we look at how to decide what that evidence was, the only way we can do that is to say we just don't know what we don't know. And we're never going to know it. There is no way in every proceeding from the finding that the information was destroyed is affected by that. Every time we go to say, would this be some evidence that's potentially useful? The judge found that. Would it be something that's materially exculpatory? I don't know. The only way we can remedy this, then, is by finding that a dismissal is the only proper way to deal with this kind of case. You don't think it's enough that the district court basically excluded all those recordings, basically said you can't use them at all? I don't, because for two reasons. One, he excluded recordings that the government had already said they weren't going to be able to use because they weren't collected in the proper way. And two, he excluded the recordings that we knew about. The evidence in the record also shows that there were at least 81 potential recordings that we didn't have because the supervisory special agent told OIG that there were 200 recordings, or more than 200 recordings, which means there's at least 81 that we don't have. So when you look at the plethora of evidence that we- Explain that. I don't think, if that was in the brief, I missed it. So I thought at the end of the day, everybody was pretty confident you had all the recordings because you went back to the original source, the attorney's office. I guess you lost- So there's two problems, Judge Malloy. First, the government would like to have us believe that we found everything and we have it because we went back to the computer that we could look at and see what was there. All they were able to prove is that, and the forensic examiner said they were probably the original recordings because that hard drive that was at the attorney's office was also wiped. So what we have is a copy of something that wasn't a full forensic copy that they were trying to compare everything to. What we find is that when the FBI agent's boss was talking to OIG, what he said is there were 200 or at least 200 recordings, and that's what he told them. So he's in the position to know about the universe that should have been out there. Then what we find is that there is no other comparable evidence because when you look at both the missing 81 potential recordings and the fact that the two pin recorders were missing and the hard drive and the computer that originally these were uploaded were all tainted in some way or missing. So when you get to the point of saying how can we be assured that we have everything, there is no way to know that. And because of that, that's why dismissal is at least in this case, under this fact pattern, something that has to be the only appropriate remedy. It's not just the recordings and not just the Dropbox files, but it's the whole of the laptop. That's what's also missing that gets lost in this is that when we were at pretrial and the judge and the government ordered the FBI agent to have his laptop forensically examined, they did that on November 30th of 2017. The government failed to seize that laptop, failed to get it. Instead, they waited until December 4th of 2017 to send an email and say, hey, take it down to Little Rock, but have somebody else take it down. In the intervening time, the FBI agent not only logged on multiple times to his Dropbox account from that laptop because we have shown that through the Dropbox and the IP records, but he also wiped his laptop. He did that by taking it to a computer store, having them wipe it twice, and then just for good measure, as he's taking it down to Little Rock to have it forensically imaged, he wipes it again. What other role did this agent play in the investigation other than working with the recordings? He was the lead case agent, Justice Kelley. What other parts? Did he have other witness interviews? I'm trying to figure out what else might be on this particular agent's laptop related to the case that wouldn't also be duplicated, say, with the U.S. Attorney's Office. He was the lead case agent along with an IRS agent and was involved from the very beginnings. In fact, I believe he was the agent that opened the case. He was, until all of this came about, the lead case agent on the case that was intimately involved with each and every step. He was the one doing quite a bit of the actual interviews. He was at every interview that I saw and could read about. Are all those interviews available still to you? No, Your Honor. There are multiple interviews, especially with the government's key witness, Mike O'Neill. There are at least two times when Agent Cesario met with Mike O'Neill that we have no documentation about. How do you know about the two meetings? We can show through the text messages and through the government's exhibits that those were times that he met with Mike O'Neill that were basically right in line with when the recordings were being made. That's where we can look to piece together that we don't have any 302s. We don't have any IRS MOIs. We don't have anything that shows that there was actually contact made other than knowing that they were texting about it. So you're suggesting that there are 302s of some sort regarding an interview with Mike O'Neill that are missing? I don't know if they were ever created. Did Mike O'Neill testify at this evidentiary hearing? He did. And did he testify that there were additional meetings that were not recorded? He testified that he had additional recordings, which he remembered making, but we did not have because specifically there were two pin recorders. The first pin recorder clip broke, so they got a second pin recorder. After this, he believed he made about ten recordings. Those recordings in line, in time space, when we know the second pin recorder actually was there and was delivered, we don't have any recordings past that. So he believes that he made those recordings, but those just simply don't exist. And so when we look at the evidence of what we can show is missing, plus the fact that we don't know what else is missing on that laptop, the defense was always going to be in a situation where we could never overcome that, and that's a constitutional violation that just can't remain without a proper remedy. Counsel, I want to ask you about the standard of review here. Is it abuse of discretion as to the remedy that was ordered? I believe, Judge Strass, that the standard of review is one that's going to be, should be de novo because we're dealing with a constitutional violation here. And while I don't have any case law because I've looked for that very point, is what's the remedy or what's the standard of review for particularly a remedy, I believe that it would be the, it should be de novo review at that point. But even if it's abuse of discretion, this is a case where that discretion was abused because giving a remedy that says the known liar FBI agent can't testify for the government and you can't use the tapes that the government wasn't going to use anyway is not a remedy that helps the defense. Are the remedies, potential remedies here what the district court ordered or dismissal of the indictment or is there something in between those two things that would have been sufficient? Well, even if there was something that would have been sufficient, the judge foreclosed that when he granted the government's motion in limine and he did that on April 3rd of 2018 and he specifically said that not only could we not get into the destruction with the FBI agent, we couldn't bring up anything that happened around that, any of the evidence that was lost, any of the circumstances by which it happened, which meant that you were never going to have even the possibility of some kind of jury instruction on destroyed evidence. Any other remedy had been foreclosed at that point. And so would those remedies that you're talking about have been sufficient? Suppose they would have allowed you to cross-examine and perhaps have a jury instruction, say, hey, there were some recordings that were destroyed, take that into account. I don't even know if legally you could do that. But, I mean, are those things that could have remedied short of dismissal in the indictment? I don't believe so because I believe once we've got this universe of evidence that's just wholly unknown, there is no way to ever combat that because every proceeding that would have happened was tainted at that point. And when the FBI agent does something so egregious, so flagrant, it should result in that the only adequate remedy is dismissal. And that's why we ask this court whether you find it's abusive discretion and or you find it's a de novo review, we're asking this court because of those two reasons to dismiss this indictment. Well, I think what the government's going to come back and say, I'm sure, is that you are unable to show any potential prejudice because the case is basically a paper case. It's a bribery case. You've got e-mails, checks, deposits, and if you look at the pre-sentence report, A to Z, it's all laid out and it's overwhelming. So what could possibly be in these recordings that could be exculpatory? Is there any theory as to what could be exculpatory about these recordings? I think for my client, there's lots of theories of what could have been on there. Because of the position he was in, there were already exculpatory information that was in the tapes that we had. That's what our original motion to dismiss and what the two other accounts that we brought in our motion were based on and our motion to suppress. The information that was gathered was very useful. And to say that the government could have come and pick and choose which recordings it had, I don't know. But for this court to uphold a standard that says the defense would have to somehow come in and not only figure out that there was additional information, which the government's obligated to give us but they didn't, and then to go to that higher standard and require us to prove what it was, it's a burden shift that's not constitutional. It's something that we should never be in that position to have to make that argument and to be the ones to describe to the court, here's exactly what was deleted because we just are not in a position to know that. And if there are no further questions, I'd like to reserve the balance of my time. If I could just ask one quick question to follow up on that. Is it your position then that we would have to, that you're asking us to apply a different standard for the destruction of evidence case? In other words, would we have to go against our case law to rule as you have just asked us to? No, I think you can follow your case law. And when you look even at cases like Youngblood and Fisher, they all talk about dismissal except they're missing one of the pieces. In this case, we have all of the pieces. And I'm just suggesting to the court that because not only do we have all the pieces, but the flagrant nature, this super bad, I don't know, whatever the court would want to call it, the timing in which the evidence was destroyed, it was destroyed four days after it was ordered to be looked at, suggests to this court that that's not only potentially useful information, but that it probably is material, exculpable information that should be and could be very helpful to the defense. And without us knowing that, we are irrevocably prejudiced and have no way to overcome that. Thank you. Mr. Elser? Good morning, Your Honors. Good morning. Thank you very much for allowing me to appear before you and argue this case. I just wanted to address before the specific allegations or statements made by Mr. Storey. Again, I think that we have in this case a judge who took very careful attention to the record and what was proven here. And these allegations that keep coming up that have no support in the evidence and that were rejected by the district court, I'll just give you a couple. There is no evidence that Mike O'Neill met separately with Agent Cesario. There is no evidence. Mike O'Neill testified he never met separately. Mike O'Neill was represented by Shane Wilkinson from the beginning. He met with Agent Cesario, Agent Munns, and his counsel every time he met with him. So he says as much in the testimony. There was one time he texted Agent Cesario directly, and Agent Cesario said, go through your attorney. That's all in the record of Mike O'Neill's testimony. Shane Wilkinson, his attorney, said he's not aware of him going behind his back and meeting with Agent Cesario. So that simply did not take place. There was no evidence of that. There was no finding of that. And the district court heard three days of testimony. Had there been evidence of Mike O'Neill secretly meeting with Agent Cesario, it should have been in his findings. That there were more recordings than was what was recovered off of Dropbox, a laptop of Kerry Layton, is, again, another red herring not supported by the evidence. There was an agent, Dispain, who had no direct knowledge of the case. He testified to that. It's at Docket 299. It was the second day on January 26, pages 652 and 677. You can look at it for yourself. Even though he had told an OIG investigator that he thought maybe there were 200 tapes or files or whatever, he testified he had no idea how many files there were. Counsel, I just want to step back and ask a preliminary legal question. I'm struggling a little with the standard of review. I think generally the remedy that's ordered for an evidentiary hearing is an abuse of discretion, but the dismissal and the indictment, which is what they're sort of challenging, is generally de novo. But you can't really evaluate it without figuring out what the remedy that was ordered. Do you have any case law or did you look at any case law to illuminate the standard of review? I know opposing counsel didn't have a case. So, Your Honor, I think that since it deals with the destruction of evidence, on the destruction of evidence issue, this court is to defer to the factual findings of the district court. And since, I would argue, materiality and whether or not you've suffered prejudice is really a fact-driven matter, especially in the context of what could have been exculpatory evidence, that whatever the standard is, it should be some deference to the district court, who has sat through the trial and knows what the evidence is. So, most of the outrageous conduct jurisprudence, I would say, in this court deals with, well, is the conduct so outrageous that as a matter of law it warrants dismissal? And since there are so few cases where there has ever been dismissal, I don't think that issue really has been... I think the statement that it is de novo deals with the legal conclusion about whether that remedy is appropriate and properly balances the requirements to defend society against criminals, at the same time protecting the rights to a fair trial. And those are the two things that are in balance. And on those issues, I would say this court should, as a matter of law, rule de novo, but as giving deference to the factual findings of the district court, who heard all the evidence. Let me ask you a question, sort of a little along the same lines. I'm more concerned, though, about the burden of proof. Normally, in these cases, the defendant has the burden of proof prejudice. But in a case like this, I mean, very few cases did they ever actually find bad faith, that there is a deliberate, intentional destruction of evidence by the government, and then the agent lying. I mean, you could probably count those in one hand. So in that very unique situation where the judge says, yes, you, United States of America, you've engaged in bad faith and you've lied on the stand about it, does the burden shift to the government then to prove a lack of prejudice? No, and, Your Honor, I want to explain the finding of bad faith and what was actually found here. The bad faith that was found, this has never been about whether there was any exculpatory evidence that was destroyed by Agent Cesario. I would suggest what was found. But how do we know that? I mean, that's the whole point. Since the computer was wiped, nobody knows what was on there. If we're going under, is it potentially useful? There is no question that the burden is on the defendant to prove bad faith, that it was potentially useful, and that there's no comparable evidence. On the potentially useful, I would argue it has to relate to guilt or innocence. In this case, what the court found was actually destroyed was drop box records that were on that particular computer. It was only potentially useful as to the discovery violation. Just keep in mind how this all came about. New recordings are discovered because Cary Layton did not load all the recordings onto the drop box at the time Agent Cesario accessed them. There's no doubt about that. The logs show that. The government asked for Cesario's computer to be examined to prove we didn't get all the recordings and we weren't sandbagging the defense and waiting until right before trial to give you 52 hours of recordings. So it was the government that requested the examination to show we had not accessed those recordings. When Cesario wiped the computer, which the court found, was not motivated by a desire to destroy anything exculpatory. I think that is a finding that is well supported. I guess that's the question I have, though. Who has the burden on that finding? Do you have the burden to show, in a case where there has been a finding of bad faith, that an intentional destruction of evidence, that the evidence was not exculpatory, or has the defendant had the burden to show that the destroyed evidence was exculpatory? I wouldn't argue with the fact that the district court found it wasn't exculpatory. I would say the burden lies with the defendants because it's speculation, whatever they're saying. What is more in this case is they can't even speculate as to what that information would be. I guess the point I was making is part of the rationale, you can uphold the district court's findings here just because he uses the magic words that are potentially useful. He did use those words, and he did use them in bad faith, and I agree with both of those. But what was potentially useful, and I think what is different than other cases, in Youngblood, the evidence would have exonerated. There was no doubt that the evidence, had it been preserved, would have exonerated the defendant. Could the potential to do that? It was cocaine. They wanted to test again. But Illinois v. Fisher, this is a classic case of where this is applied, and that was there was semen that was not preserved in a rape case. The defendant had two experts testify that had that been preserved, it could have been tested, and it could have exonerated the defendant of the charges. The Supreme Court said it wasn't destroyed in bad faith, so we're not going to reach that issue. But to follow up, and this is a little different, we don't have just a set item to be tested. It's a computer that can store a number of things, not just can store recordings. It can store documents. It could store videos. And I think the troubling part is how would the defendant ever be able to have that information? What could they possibly present to meet the burden of proving that that was exculpatory? Well, one thing that they could do is just do what that court asked them to do in the oral arguments, is categorically say what that would be. Would it be an interview of Mike O'Neill? That's been suggested. Mike O'Neill denies that he had been interviewed. Would it be an interview of any of the other witnesses that Cesario conducted secretly? And the government turns over tons of evidence, recorded interviews, interviews that Mr. Story participated in. We turn over all that evidence, and then we hide on a computer that is only used, and keep in mind the only reason he used the computer to download those files was because the FBI computer would not allow for a Dropbox account to be set up. So he used a laptop that had been used and passed around and was not used for official purposes. It could access the Internet. He used it solely to download the Dropbox account. And he could lie about other things, and I'm not going to say he didn't mislead the court and lie about the reason he wiped that computer. But one thing he said that I think has a lot of credibility is that there was nothing else case-related on that computer but what he had downloaded through the Dropbox folder. And he explained the only reason he used that file, that folder, or that computer was because he couldn't access Dropbox on the FBI computer. And also keep in mind, you would have to assume that Agent Cesario is running around on his own without his co-case agent, Agent Munns with the IRS being aware of it, without the government attorneys being aware of it. It sets up a scenario where you have to believe that Agent Cesario is out there conducting an investigation, discovering exculpatory information that he needs to hide from both the prosecutor and the defense, and then he puts it on this laptop where he's downloading audio files. I mean, it seems like it's the judge, the district court, hearing all the evidence and looking at Cesario, concluded this, that Cesario did not wipe that computer because it contained evidence related to the case. The court found the most likely reason he wiped that computer was because he had something on there that he shouldn't have had on there. And I think some deference should be given to that since the court is the one making the findings that he lied about the medical records and whatever. The court is being even-handed in this regard and is finding that the reason that he's concluding that this was not animated by case considerations. What about the remedy? Mr. Story says that you weren't going to put on the tapes anyway. You're shaking your head and you're disagreeing. I'm going to ask him to point into the record whenever the government said it was not going to use those tapes. I would say to Your Honor that the evidence in this case was so overwhelming, whether we needed Mike O'Neill's tapes or not was beside the point. But they claimed it was exculpatory. And if there was exculpatory evidence and then inculpatory evidence, which I think you can even get from reading the transcript that is included in the motion to suppress where John Woods is trying to get Mike O'Neill to hook up with his attorney so that if they come to you, you go get his own attorney. You can read those. And to this day, despite repeatedly saying that it's 65 hours of tapes, 65 hours of tapes they've had since November of 17, despite repeatedly saying it contains exculpatory information, there is not a brief that's been filed in this case that sets forth what's the exculpatory information. Counsel, I don't know where Judge Kelly was exactly heading, but I think I might have the same question, which is I'm concerned about the remedy too, which is why I asked all those questions about the standard of review and what we're really reviewing here. Because I'm not sure that the defense is right, the dismissal of the indictment was warranted. I'm also not sure that the district court did all that it should have done to remedy the bad faith destruction of evidence. There might have been something in between. And so I'm just wondering what your response to that is. Because it does seem that the remedy here was largely symbolic in the sense that I don't know if it really handicapped the government's case all that much or was proportional to the constitutional violation that occurred. But, Your Honor, this is not a two-edged sword in that regard. If Cesario was so important to the government's case as they claimed and had participated in everything and whatever, if you say the government can't use that agent as a witness, then you pretty much prove that the government didn't rely on him to prove the case. And I think a careful look at the record of the trial in this case will prove that. But you weren't going to use Cesario anyway once he destroyed the computer. He was gone. I mean, he's never going to be able to testify in any case from this point forward. So he's out, right? And the tapes are out. So other than make you pay some costs, what was the sanction? Well, I guess the question is what is being sanctioned there. If Cesario had no effect, if his wipe had no effect on the defenses, had no effect on what they could present, they were not prejudiced, the court specifically found. They suffered no prejudice. They were not left without any evidence that they didn't have before the wipe. And so if you're going to make the finding that there is no prejudice, that they suffered at all, then what other remedy, what remedy would it call for? Is it to punish Agent Cesario? That's punishing the government. Agent Cesario's conduct should be punished by OIG or a criminal prosecution or whatever. I'm not sure that's true. He's an agent who was a representative of the government just like the U.S. Attorney's Office is. And so I think when somebody acts in an intentional bad faith way, it's not unwarranted to punish the government's case. But should you punish the government's case if that bad conduct did not prejudice? Well, that's the question. I agree with that. But why wouldn't it cast a cloud or a pallor over the entire investigation? It seems that the remedy just allows the government to just carve out the cancerous part and go on with the good part and no harm, no foul, a bunch of metaphors. What I would like to say in that regard is this. There are some cases in which an agent conducts searches and sees, does surveillance, and interviews, obtains confessions. And that case, such a case as that, had that been this case, then I would agree. Excluding that agent would have made the government whatever. This case was not agent-driven. This was a case where you had all the records produced by outside people, the communications between Orrin Paris and John Woods were produced by Mr. Story under a grand jury subpoena. The communications between John Woods and the Northwest Arkansas Development District produced by the development district, authenticated by the people that engaged in it. Nobody, nobody disputed that John Woods used his influence to direct money to Ecclesiast College. The question was whether or not what was paid to Randall Shelton was a kickback for that. So there is no dispute that the college got $690-something thousand dollars or over $600,000 from the Northwest Arkansas Development District and the West Central Arkansas Development District. They paid Randall Shelton's consulting company $267,500 of that. Of that, he withdrew or transferred directly to John Woods about $200,000. Let me ask you, what about the argument, though, that let the jury decide? Why not let the jury have this information and if it's no harm, no foul, and he didn't do anything wrong, the jury can make that determination? So the court, in denying the motion or granting the government's motion in limine, cited the Olbrecht case, which is a case out of another circuit in which there was actual criminal wrongdoing by the case agents involved in that. And what this would have devolved into had you allowed, and first of all, Mr. Story did not go to trial. So, I mean, Mr. Parris did not go to trial, and he admitted his guilt, and so the question of the remedy with regard to him becomes a little bit more problematic I mean, he's come in and admitted his guilt, and now he's saying But it was conditional, and Judge Molloy's point is a good one. If you would have allowed the jury to know that he destroyed the evidence in bad faith, you're right. That would have become a central focus of the claim. But it may well be that Mr. Parris would have gone to trial knowing that he had that defense potentially. Well, but that would have involved, as the court said, a diversion off into Agent Cesario's, which took three days of testimony, that had nothing to do with whether or not money got sent to the college, that got sent to Shelton, that got sent back. It would be punishing the government by somebody's misconduct, when that misconduct had nothing to do with the evidence that was presented at trial. And that's what the judge found. It had nothing to do with the evidence presented at trial. If it had, we would have had to call Agent Cesario. He didn't collect it. It wasn't authenticated by him. It wasn't disputed that money was sent and that John Woods was involved in it. It is a case where if Agent Cesario wasn't, the defendant did not in any way depend on Agent Cesario's observations, collection of evidence, or testimony in any manner, and to put him on trial and to say this is the government, would have been unfair and prejudicial. And that was what the court found. And that decision should deserve some deference, especially since it was an evidentiary decision where the court is having to weigh, after having spent three days hearing the different arguments, that there were 200 tapes and that there was this meeting and all. And I will say this also. If you look carefully at the court's ruling on the motion in limine, the court said that that matter could be brought up again by the defense. He wasn't foreclosing it completely. It would matter what happened at trial. And the defense in the Woods and Sheldon case did in fact call Agent Cesario. They weren't allowed to get into the White because the door had not been opened. But you're never going to be able to get into that order on the motion in limine. It was a conditional, we'll see if you can prove an ability to get it in, the court would consider it. Thank you. Thank you. Mr. Storey, rebuttal. Yes, Your Honor, thank you. The key here is we're confusing the standard that we should be looking to because Youngblood sets out whether or not the evidence needs to be potentially useful or of some exculpatory value. Here, the difference turns on bad faith. Once you have the bad faith, we no longer have a Brady-like standard, which is what the government's effectively arguing for. We have a much less standard, which the district court already found. And when you look at the laptop, this is an undercover laptop. Yes, Agent Cesario said, I've never used it on any other case. But it's an undercover laptop that they testified was used on other cases previously. And to say that he was lying about something which the district court found and he wasn't lying about that is a difficult hurdle for me to jump through. I want to ask you a factual question. Did your client ever ask the district court for a different remedy other than dismissal of the indictment? Something less. Let the evidence be presented about Agent Cesario's misconduct to the jury. Let's have an instruction stating that there was the destruction. Was there ever any request to the district court to do any of those things? Or was it just dismissal of the indictment or the government's position, do nothing? What we had asked for, Judge Strauss, was dismissal. And then we ended up having that motion in limine be granted the day before the conditional plea. There was never another request. But to look at what the judge had ordered, he basically foreclosed that. And even in looking at the trial, which happened beyond that, there was no way that that was You're talking about the government's motion in limine. The government's motion in limine, yes. Does that hurt your case, though, that we don't have some sort of other remedy that you're asking for? I mean, in other words, are we limited to considering only whether dismissal of the indictment was the appropriate remedy here? Under the conditional plea, I believe that's the only proper remedy. In the brief time I have left, to look at the two other meetings with the government and Neal, I would ask the court to look at Government Exhibit 9 and Paris Exhibit 4. And that's the citation to those. I would also point the court to Youngblood. The key is Youngblood not only stands for the potentially useful evidence, but it also says that when by the conduct, those cases in which the police themselves, by their conduct, indicate the evidence could form a basis for exonerating the defendant, that is where we have to hold the government responsible. And I think you brought an excellent point up, Judge Strauss. The government is all of them. They're trying to somehow separate Agent Cesario and say we didn't need them. But for them having Agent Munns that was part of this because he was the IRS agent, Agent Cesario was the person at the counsel table in everything that had happened up until the wipe. And he would have been the one who had put on all the evidence. So to say we didn't need him, they needed somebody, and they had a co-agent which happened to be able to save them. Otherwise, they would have been in trouble, and they wouldn't have had another way to get the information in. And to say that Cesario, he would never lie to the government. Yes, he did. He lied in telling them that he went and had a professional wipe the hard drive. That was only found when the government looked, and it's in the record, the government looked and found an email, and he disclosed it the night before the evidentiary hearing that said, oh, yeah, I had it wiped by a professional, and oh, yeah, I paid cash for that. So the government's saying, oh, he would never hide anything is just not true. He had already hid it. He had already been proven wrong. And with that, I thank the court if there are no further questions. Anything else? Thank you. We thank both parties for your arguments and your briefing, and we'll take the matter under consideration.